IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROGER EUGENE FAIN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-893-O |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

filed by petitioner, Roger Eugene Fain, a state prisoner confined in the Correctional Institutions

Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of

TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has

concluded that the petition should be denied.

## I.  BACKGROUND

Petitioner was accused of murdering Linda Donahew in the course of committing or

attempting to commit sexual assault in Tarrant County, Texas, Case No. 1241116D. Adm. R.

295, ECF No. 29-13. At the time of his conviction, Petitioner was serving a life sentence for the

murder of Sandra Dumont in Williamson County, Texas.

The evidence at trial was summarized by the state appellate court as follows:

> Bonnie Bishop shared a house with her sister, Donahew. On June 1, 1987,
> Bishop left work and arrived home at approximately 8:00 p.m. She entered the house
> to find her sister's nude and blood-covered body lying on the floor in a bedroom
> closet.

The autopsy revealed that Donahew had died from manual strangulation and that a secondary cause of death was a stab wound to her neck. The postmortem examination also revealed several hairs found clinched in her hands, DNA artifacts in her mouth, and three foreign pubic hairs in the genital area.

Approximately fourteen years later, in August 2001, a DNA sample was taken from Appellant, who was incarcerated for an unrelated crime. The sample was entered into the Combined DNA Index System (CODIS) of the Texas Department of Public Safety (DPS). Four years later, in October 2005, the cold case of Donahew's murder was reopened, and the DNA samples acquired during the examination of her body were uploaded into CODIS and were found to match the DNA profile of Appellant.

There was no direct evidence of Appellant's involvement in Donahew's murder. At trial, the State relied on the DNA evidence, testimony from a witness who saw a truck similar to that owned by Appellant at the time of the offense parked in front of Donahew's house at the time of the offense, the testimony of an inmate, Danny Smith, who claimed that Appellant had confessed to him in jail, testimony that Donahew had previously been seen in the company of Appellant, and testimony that on the day of her death she had said that she was worried about meeting someone who wanted to look at a truck she was selling.

Dr. Nizam Peerwani, the medical examiner who performed the autopsy and forensic examination of Donahew's body, testified that he took oral swabs from her mouth and that they contained DNA material. He testified that he was unable to determine exactly when the DNA had been deposited in her mouth. Kelly Solis testified that she was a DNA analyst for the DPS CODIS lab in Austin, Texas. She testified that the DNA samples from the oral swabs taken by Dr. Peerwani matched Appellant's DNA profile.

Constance Patton testified that she was a senior forensic biologist and DNA technical leader for the medical examiner's office crime laboratory in Fort Worth. She testified that she had examined the samples from the oral swabs taken by Dr. Peerwani and that the results of her examination showed that the samples contained DNA material consistent with the DNA of Donahew and a mixture containing one DNA sample consistent with that of Appellant and a sample of male DNA foreign to both Donahew and Appellant. Patton testified that it could not be determined whether Appellant's DNA had been contributed before or after the other male DNA or how long it had been present. She also testified that she had tested a portion of a towel taken from Donahew's house. The towel tested presumptively for blood and also for a mixture of DNA from Donahew. She testified that a sample of male DNA from Ronald Nix, a boyfriend of Donahew, could not be excluded from matching the sample on the towel. Patton also found a sperm stain on the comforter from

2

Donahew's bed, the DNA profile of which also matched Nix's sample.

Dr. Peerwani had found several hairs clutched in Donahew's hand during the postmortem examination. One of the hairs was identified as dog hair. Other hairs were consistent with either the hair of Donahew or that of her sister, Bishop. One hair, however, was not matched to Donahew, Bishop, or Appellant.

Susan Kenney testified that in 1987 she had been working as a serologist in the Fort Worth Police Department Crime Lab. She examined the evidence taken by Dr. Peerwani as part of the examination of Donahew's body. She testified that part of the protocol of the examination was to comb the pubic hair area of Donahew. In this case, the combing resulted in finding three hairs that were not similar to those of Donahew.

Detective Jim Ford testified that he had requested DNA testing of the unknown pubic hair found on Donahew's body. The test showed that Nix could not be eliminated as a contributor of the hair.

Luke Kortegast, who testified by videotaped deposition because he was on active duty in the military and scheduled to be deployed overseas, testified that at the time of the offense, when he was seventeen years old, he lived with his parents next door to Donahew, whom he described as attractive. He often saw a white pickup truck parked at Donahew's house from the winter of 1986 through the early spring of 1987. He described the truck as a mid-to-late 1970s white pickup truck with large tires and a raised suspension. He thought that it was a four-wheel drive truck and in "pretty good shape." He testified that on occasion the truck had been at the house overnight. He did not remember the trucks having a toolbox or a PVC pipe attached to its bed.

He described the driver as a white male, approximately six feet tall and weighing between 175 and 200 pounds, with long dark brown hair and a beard that ranged from a few days' stubble to a full beard. Kortegast testified that the man usually wore a baseball cap and aviator-type sunglasses.

At some point in the spring, Kortegast stopped seeing the truck at Donahew's house, but he testified that he did see it parked in the driveway one more time on the day of Donahew's murder. He testified that the truck was in the driveway at approximately 10:30 a.m. the day of her death. He was unable to identify Appellant as the driver of the truck, either at trial or from a photo spread. Kortegast also testified that Donahew had frequent visitors in addition to the bearded man.

Ernest Fain, Appellant's brother, testified that in 1987, Appellant drove a mid–1970s white Ford pickup truck and that the truck had a black tool box and PVC

piping attached to its bed. He described it as a standard truck, not a raised four-wheel-drive vehicle. He also testified that he had seen Appellant approximately a dozen times during 1986 and 1987 and that he had never known Appellant to have a beard. He also testified that the pickup was "very beat up."

Sheila Nelson testified that she lived next door to Donahew in 1987. On the day of Donahew's murder, Nelson and her husband left the house at approximately 5:15 p.m. to take a walk. They noticed a white Ford pickup truck parked on the street "not in front of my house and not in front of Linda's but kind of in between the two." She testified that it was an older model truck with a tool box. The truck was still there when she returned from her walk about fifteen to twenty minutes later. She and her husband went out to eat, and when they returned at about 8:30 p.m., the pickup was gone. Nelson testified that Donahew had had a lot of friends and quite a bit of company.

Bishop, Donahew's sister, testified that in November 2005 she had been shown a photo spread containing Appellant's photograph. After looking at it for approximately twenty minutes, she had told Detective Ford that she did not recognize anyone in it. After the photo array was shown to her other sister, however, Bishop asked to see it again, and she then told Ford that it looked like someone who had come up to Donahew in a restaurant and bar called John B's. Bishop also testified that Donahew had broken up with Nix some time before her death.

Donald Thweatt testified that in 1987 he owned two horses, which he stabled at Braddock's Stables in Arlington. Around June 1, 1987, he saw Donahew, who also kept horses there, at the stables. She was not driving her usual vehicle but was with a male in a 1970s white Ford pickup. He described the man as being about six feet tall and weighing around 180 pounds with shoulder-length hair and glasses. On cross examination, Thweatt said that Donahew and the man were unloading clear plastic bags of cedar shavings. He also described the man as having an untrimmed and unkempt beard. Thweatt testified that he could not remember the exact date, but that it was "sometime in the late spring of 1987."

Michael Higham testified that in the late spring and summer of 1987, he was the detail shop manager of Pleasant Ridge Car Wash in Arlington. In the late spring or early summer of 1987, Donahew took her car in for detailing. When he had finished with the car, he went to the horse stables to pick her up and take her back to her car. She was with a man whom he identified as Appellant. Higham drove both the man and Donahew back to pick up her car.

Arlington police officer William Zimmerman testified that in August 1987, he had interviewed Michael Higham and that Higham had told him that on the day he went to pick up Donahew at the stables, she was not there when he arrived.

4

Higham had talked to Ms. Braddock for a few minutes until Donahew arrived with a white male who was driving a pale blue 1973 or 1974 pickup truck with wide spoked wheels.

Danny Smith, a sixty-three-year-old inmate who at the time of trial was serving forty-five years' confinement for involuntary manslaughter, enhanced to a habitual offense, testified that he knew Appellant from having been in prison with him. In 2005, while they were housed in the same cell block of the Eastham Unit, Appellant told him that Arlington detectives had visited him and had taken mouth swabs for DNA purposes. After the visit, Appellant started "acting in an excited type of manner." Appellant told Smith that he had been having sex with Donahew and had unintentionally strangled her during sex. Smith claimed that Appellant told him that the strangulation was part of the sex act.

Smith admitted that he was worried about the possibility of dying in prison and that he had lost various appeals in his case, up to and including his appeals in federal court and the United States Supreme Court. He also admitted that he had made contact with the Tarrant County District Attorney's office regarding testifying against Appellant, calling himself a "crucial State's witness" and offering his testimony in exchange for benefits to him, including help with his sentence. He testified that he had wanted a guarantee in writing of help "in this and possibly other offenses currently unsolved." He also admitted to having offered himself as a State's witness in other cases. In exchange, he had asked to be removed from his current prison unit and placed in a unit with better medical facilities. He also admitted that he had, in fact, been moved to a geriatric medical facility in the Terrell Unit.

Smith testified that when he was interviewed by Appellant's trial counsel, he had told them that he did not know why he had been brought to Tarrant County and that he did not have any information that would help the State regarding Appellant's alleged killing of Donahew. Smith also denied knowing that one of Appellant's attorneys was, in fact, an attorney. Later, however, Smith admitted that he had previously written to the same attorney requesting help in his case. Smith testified that Appellant had shared news articles from newspapers and from the internet about the Donahew murder case.

Ronald Nix testified that he had dated Donahew from February 1987 until her death. In May 1987, he and Donahew had taken a vacation together to Mexico. A picture taken at the time of the trip showed that in May 1987, Nix had dark, curly hair and wore a full beard. He also testified that he had seen Donahew on the Friday preceding her death. He testified that shortly before her death, he had been at a club with Donahew and had seen her talking with a man whom Nix identified as Appellant. Nix testified that Donahew had given Appellant her phone number. Nix also admitted that he had been at Braddock Stables with Donahew in May 1987.

5

Adm. R. 2-11, ECF No. 26-17.

Based on the evidence, the jury found Petitioner guilty of capital murder, and the trial court assessed an automatic life sentence and ordered the sentence to be served consecutively to his prior life sentence. Adm. R. 297, ECF No. 29-14. Thereafter, Petitioner appealed his conviction and filed a postconviction state habeas application challenging his conviction, to no avail. Petitioner also sought postconviction DNA testing in state court.

## II.  ISSUES

Petitioner's claims are multitudinous and addressed as thoroughly as practicable. They fall within the following general categories:

(A)    completeness of the trial record (ground one);
(B)    ineffective assistance of counsel and denial of counsel (grounds two, eight, and twenty-one);
(C)    prosecutorial misconduct (grounds three, four, nine, twelve, fourteen, fifteen, sixteen, and seventeen);
(D)    illegal search and seizure and improper identification techniques (grounds five, six, seven, ten, and eleven);
(E)    judicial bias, error, and misconduct (grounds thirteen, nineteen, and twenty); and
(F)    actual innocence (ground eighteen).

Pet. 6-13, ECF No. 1.

## III.  RULE 5 STATEMENT

Respondent believes that the petition is neither barred by the statute of limitations nor successive but asserts that multiple grounds are unexhausted and procedurally barred. Resp't's Ans. 12, ECF No. 23.

## IV.  PROCEDURAL DEFAULT

Respondent claims petitioner's grounds three, four, twelve, fourteen, fifteen, and sixteen,

although raised in Petitioner's state habeas application, were forteited in state court because the claims should have been but were not raised on direct appeal and, thus, are procedurally barred from federal habeas review. Resp't's Answer 14-15, ECF No. 23. Similarly, Respondent claims Petitioner's eleventh ground was forfeited in state court because no contemporaneous objection was raised at trial and, thus, is procedurally barred from federal habeas review. *Id.* at 15.

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997).

Here, the state court clearly relied upon firmly established and regularly followed state procedural rules to deny the claims raised in grounds three, four, eleven, twelve, fourteen, fifteen, and sixteen. *Ex parte Gardner*, 959 at 199. *See also Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding "the Great Writ should not be used to litigate matters which should have been raised on appeal");*Ex parte Crispen,* 777 S.W.2d 103, 105 (Tex. Crim. App. 1989) (explaining its adherence to the contemporary-objection rule). *See also Busby v. Dretke,* 359 F.3d 708, 719 (5th Cir. 2004) (recognizing that the Texas procedural rule as stated in *Ex parte Gardner* as being "firmly established" and "an adequate state ground capable of barring federal habeas review"); *Dowthitt v. Johnson,* 230 F.3d 733, 752 (5th Cir. 2000) (recognizing that the Texas contemporaneous-objection rule, which requires a timely objection to preserve error for appeal, is strictly and regularly applied, and is therefore an adequate state procedural bar to federal review). Accordingly, federal habeas

7

review of the claims is barred unless Petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[–*i.e.,* that he is actually innocent of the offense for which he was convicted]." *Coleman,* 501 U.S. at 750.

Toward that end, Petitioner claims that he was not permitted any input into what issues would be raised on appeal and that the issues "should have been raised, and adjudicated on Direct Appeal, yet for reasons of his own, Appellate Counsel failed to present, pursue, or put Petitioner's interests before his own." Pet'r's Reply 1, ECF No. 23. Under the familiar *Strickland* standard, *see infra,* ineffective assistance of counsel requires a showing of deficient performance and prejudice in order to constitute cause to excuse a procedural default.

A submitted affidavit of court-appointed appellate counsel, J. Rex. Barnett, shows that he "reviewed the entire record of the pre-trial and trial proceeding; identified and researched possible points of error; and wrote the Appellant's Brief containing those points of error which I felt were legitimate based on the record." Adm. R. 231, ECF No. 29-13. On the other hand, Petitioner points only to the bare fact that his attorney did not raise one or more of the claims he now puts forward. The mere fact that counsel did not raise an issue is insufficient to show that counsel's decision not to do so was deficient. *See Smith v. Robbins,* 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."); *Dorsey v. Stephens,* 720 F.3d 309, 320 (2013), *cert. denied,* 134 S. Ct. 1292 (2014) ("When, as here, counsel files a merits brief, a defendant generally must show that 'a particular nonfrivolous issue was clearly stronger than issues counsel did present.'") (quoting *Robbins,* 528 U.S. at 288); *Lockett v. Anderson,*

8

230 F.3d 695, 708 (5th Cir. 2000) (agreeing that "a blanket assertion that all previous counsel were ineffective is not sufficient to establish . . . cause"). Petitioner presents no evidence or legal argument sufficient to demonstrate that counsel erred in exercising his judgment not to raise on appeal the claims in grounds three, four, eleven, twelve, fourteen, fifteen, and sixteen. It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983).

Nor has Petitioner presented any new, reliable evidence to make a colorable showing of actual innocence. Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the grounds are procedurally barred from the Court's review.

## V. DISCUSSION

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102. Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of

rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Finally, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1094 (2013); *Harrington*, 562 U.S. at 99; *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004).

### A. Incomplete Trial Record

Under his first ground, Petitioner claims he should be granted an out-of-time appeal as the first appeal was based upon an incomplete trial record. Pet. 6, ECF No. 1. Specifically, Petitioner complains that the trial court sealed the reporter's record of the voir dire proceedings, volume six, which included juror information and inflammatory remarks by the trial judge, in violation of his constitutional rights to access the courts, due process, and equal protection. Pet'r's Mem. 2-4, ECF No. 12.[1] He also complains that, rather than challenging the sealing of the record, appellate counsel "simply perfected Fain's Direct Appeal without it." *Id.* at 3. This claim is frivolous. In his submitted affidavit, appellate counsel, J. Rex Barnett, averred, and the state habeas court found, that he had access to and reviewed the entirety of the record, including the contents of the sealed volume, for potential reversible error. Adm. R. 231, 236-37, 240, ECF No. 29-13. Consequently, Petitioner

---

[1] Due to inconsistencies in the pagination of Petitioner's memorandum, the pagination in the ECF header is used.

cannot show that he was denied a complete record on appellate review.

### B. Ineffective Assistance and Denial of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. The Supreme Court recently emphasized in *Harrington v. Richter* that—

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under

the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000) (emphasis in original)).

Accordingly, it is necessary only to determine whether the state courts' adjudication of Petitioner's

ineffective assistance claims is contrary to or an objectively unreasonable application of *Strickland.*

*Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir.

2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Under his second ground, Petitioner claims appellate counsel, J. Rex. Barnett, was ineffective

by failing to (1) obtain and use the complete trial record and (2) present his claim that the state

improperly introduced extraneous-offense evidence. Pet'r's Mem. 4-5, ECF No. 12. As noted above,

the first claim is frivolous. In response to the second claim, counsel averred in his affidavit, in

relevant part, as follows:

> Mr. Fain also complains that I failed to object to the introduction of
> extraneous evidence at trial. I do not have access to the trial record containing the
> complained of evidence; however, a review of my brief on direct appeal shows that
> my defense of him was fairly extensive, and that at least one of the points of error in
> the brief dealt with the evidence that I felt was inadmissible. I remember that, when
> reading the record, I felt the sufficiency of the evidence supporting the conviction
> was marginal (in my opinion) and I felt strongly about his case, and, had there been
> an argument to make about a properly preserved point of error concerning other
> instances of improperly admitted testimony, I would have raised the issue on appeal.

> In brief: I reviewed the entire record of the pre-trial and trial proceeding;
> identified and researched possible points of error; and wrote the Appellant's Brief
> containing those points of error which I felt were legitimate based on the record. I
> believe the Applicant received effective assistance of counsel on appeal.

Adm. R. 231, ECF No. 29-13.

The state habeas court entered factual findings consistent with counsel's affidavit and

concluded that appellate counsel exercised reasonable professional judgment in deciding which

12

issues to raise on direct appeal, and the Texas Court of Criminal Appeals denied relief based on those findings. *Id.* at 241-4. As noted by the state court, appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). The state courts' adjudication of the claims is a reasonable application of *Strickland.*

Under his eighth ground, Petitioner claims he was denied counsel at critical stages. Pet'r's Mem. 12-14, ECF No. 12. To reiterate, the state appellate court stated the following sequence of events. In August 2001, a DNA sample was taken from Petitioner, who was then incarcerated on his Williamson County murder conviction, and entered into CODIS. Four years later, in October 2005, Donahew's murder case was reopened, and the DNA samples found on her body were uploaded into CODIS and were found to match Petitioner's DNA profile. On December 5, 2005, a search warrant issued to obtain saliva samples from Petitioner. Pet'r's Mem. 89, ECF No. 12. Petitioner was subsequently indicted on June 1, 2006, and, on June 2, 2006, a bench warrant was issued to have him returned to Tarrant County from TDCJ. Three weeks later, on June 22, 2006, J. Warren St. John was appointed to represent Petitioner. Adm. R. 249, ECF No. 29-13. Petitioner asserts that his right to counsel attached on December 5, 2005, at the time the probable cause affidavit was submitted and the search warrant issued.

The state habeas court found no legal basis for Petitioner's claim that the execution of a search warrant is a critical stage of a judicial proceeding entitling a defendant to counsel. Instead, relying on the Supreme Court decision in *Rothgery v. Gillespie County,* 554 U.S. 191 (2008), the state court determined that the Sixth Amendment right to counsel attaches when a criminal defendant

is judicially arraigned or has his initial hearing before a magistrate. *Id.* at 250. Therefore, because counsel was appointed to represent Petitioner three weeks after his indictment and before any substantive pre-trial setting occurred, the court concluded that he was not denied counsel during any critical stage of his prosecution. *Id.* at 249-50.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The right to counsel applies in all state criminal prosecutions in which the defendant is accused of a felony and guarantees an accused the right to have counsel present at all "critical" stages of the criminal proceeding. *United States v. Wade,* 388 U.S. 218, 227-28 (1967); *Gideon v. Wainwright,* 372 U.S. 335, 342 (1963). Under *Rothgery,* the right to counsel attaches at "the initiation of adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery,* 554 U.S. at 198. *Rothgery* further explained that once the right attaches, counsel must be appointed or the defendant must be given the opportunity to retain counsel within a reasonable time thereafter to allow for adequate representation at any critical stage. *Id.* at 212. The state court's adjudication of the issue is consistent with *Rothgery*. In this case, the warrant for the DNA sample was taken in an attempt to connect Petitioner with an uncharged offense. Thus, no prosecution had commenced at the time that the search warrant was executed. Accordingly, Petitioner cannot establish a violation of his Sixth Amendment right to counsel.

Finally, Petitioner claims trial counsel were ineffective because counsel had a conflict of interest; failed to object to extraneous-offense evidence; failed to seek a "limiting statement" concerning the state's inappropriate bolstering and vouching of state witnesses; failed to challenge DNA as a retroactive law; failed to present a DNA witness or "photo array specialist"; failed to

14

"investigate/interview or present a viable defense"; relied entirely on the state's file to present a defense; failed to obtain "truck records/registration" to present to the jury; and failed to note, object to, or argue the lack of corroborating evidence. Pet'r's Mem. 34-35, ECF No. 12.

Trial counsel Wes Ball, a board-certified specialist in criminal law since 1985 and experienced in serious felony cases, including capital murder, submitted an affidavit in response, in relevant part, as follows (all punctuation and grammatical errors are in the original):

I have received and reviewed an Application for Writ of Habeas Corpus in the instant case filed by my former client, Roger Eugene Fain. Mr. Fain claims that he was not provided effective assistance of counsel during this trial. Mr. Fain complains of his representation by me and my co-counsel in his trial, Warren St. John. I have known Mr. St. John for over two decades and have worked with him in the representation of clients both before and since Mr. Fain. I know Mr. St. John to be a competent criminal trial attorney with a vast amount of criminal law experience. I have reviewed some records and notes to assist in my recollection of the events related to Mr. Fain's representation.

I was appointed to represent Mr. Fain on a charge of capital murder in 2006. The case was filed in the 372nd District Court of Tarrant County, Texas in cause number 1023944D. Ultimately, a jury trial was conducted on the charges against Mr. Fain. Shortly prior to trial, the State of Texas waived the death penalty. After hearing evidence and argument, the jury returned a verdict of guilty of capital murder. Having waived the death penalty, Mr. Fain's was sentenced to confinement in prison for life. Mr. Fain had previously been convicted in another murder in Williamson County, Texas for which conviction Mr. Fain was serving another term of life imprisonment. The trial judge in the instant case ordered that the sentences run consecutively with one another.

Prior to trial Mr. St. John and I investigated the charges against Mr. Fain. We secured the services of a private investigator, Mr. Bruce Cummings. I had used Mr. Cummings to conduct investigations in serious cases on numerous occasions. Mr. Cummings was a competent investigator. We secured a number of experts to consult with and assist us in trial preparation. The case against Mr. Fain was largely based on a DNA match to evidence recovered from the victim's body. We secured the services of Dr. Laura Gahn, a DNA expert who worked at Identigene in Houston, Texas. We flew to Houston to confer with Dr. Gahn and review all aspects of the DNA evidence. For strategic reasons, we did not have biological samples sent to Dr. Gahn for retesting. Dr. Gahn was also flown to Tarrant County to be present in Court

for consultation regarding the DNA evidence portion of the trial. Dr. Gahn was instrumental in preventing guesswork, disguised as expert opinion from being presented as prosecution evidence at trial.

In addition to the expertise of Dr. Gahn, we consulted with Dr. Roy Malpass of El Paso, Texas. Dr. Malpass is one of the country's top experts in the field of eyewitness identification. One aspect of the case concerned eyewitness identification. Additionally, we secured the services of Dr. Kelly Goodness, a forensic psychologist. Dr. Goodness was able to assist us in exploring any mental health issues that might be present in the case as well as any mitigating evidence should the State proceed with the death penalty. Dr. Goodness's examination of Mr. Fain, and her conclusions were very negative and for that reason, she was not used as a witness in the case.

During preparation for trial, we obtained voluminous discovery materials from the State of Texas. We reviewed those materials which included police reports, witness statements, forensic reports and other relevant materials. Mr. Fain complains that trial counsel failed to seek out and interview potential witnesses and witnesses scheduled to testify. This claim is incorrect. We interviewed some witnesses, and with other witnesses, we had sufficient documentation concerning their knowledge of facts in the case. For every witness that testified, we were prepared and effectively cross examined those witnesses. There were no witnesses that were a surprise to the defense. A key State's witness, Danny Smith testified that Mr. Fain admitted the homicide to him in a prison conversation and acknowledges speaking with Mr. Fain's trial counsel. Mr. Smith's recollection is correct. We did interview Mr. Smith prior to trial. Additionally, we did not have any witnesses identified that would have been of benefit to the defense that we did not interview or consider. Mr. Fain's complaint is extremely vague and he fails to identify any particular witness that was not sought out or interviewed that negatively impacted his trial.

Mr. Fain complains that we failed to make certain objections at trial. While I have not reviewed a transcript of Mr. Fain's trial, I can state that we made any and every objection that would have had a legal basis and for which strategy would have warranted us to make. Mr. Fain's complaint concerning failure to object to extraneous offenses, bolstering of witnesses, unqualified expert witnesses and improper opening and/or closing statements is also extremely vague. I have reviewed the opinion of the Second Court of Appeals from Mr. Fain's direct appeal. I have found no instance where the Court of Appeals found any improper extraneous offenses were admitted, any witnesses were improperly bolstered, any unqualified witnesses were permitted to testify, and improper arguments made. Nor do I find any of these issues raised in the direct appeal. I do not independently recall any of these issues arising in the trial of Mr. Fain's case. Nor did I find in the appellate decision any instance where error occurred at Mr. Fain's trial that was considered waived by defendant's trial counsel for failure to object.

16

> My representation of Mr. Fain at trial was not ineffective. I provided Mr. Fain with effective assistance of counsel. I am aware of no action that could have been taken that would have changed the outcome of the trial. My records reflect that I devoted over 200 hours in the defense of Mr. Fain, excluding trial time. Additionally, it is my opinion that Mr. St. John was not ineffective and also provided him with effective assistance of counsel.

Adm. R. 217-20, ECF No. 29-23.

Trial counsel J. Warren St. John, also an experienced criminal defense attorney with over twenty-five years of experience, submitted an affidavit in response that mirrors Ball's, save for the last two paragraphs, in which St. John states:

> Mr. Fain's exposure at trial was Life in prison and the Court sentenced him to Life in prison. Mr. Fain was kept informed about the strategies of his case at all times.

> When representing a client, my goal is always to achieve the best possible result with his or her direction, which is exactly what I did with Mr. Fain's case. All course of conduct was strategically designed to benefit my client.

*Id.* at 221-27.

The state habeas court entered factual findings consistent with counsel's affidavits, too numerous to list here, and, applying the *Strickland* standard, concluded that counsel

— adequately and independently investigated Petitioner's case;
— fully and adequately prepared for Petitioner's trial, including filing pre-trial motions and consulting expert testimony;
— exercised reasonable professional judgment in deciding which witnesses to present and what evidence to contest; and
— functioned as counsel guaranteed by the Sixth Amendment.

*Id.* at 279-90. The court further concluded that, given the evidence, there was no reasonable probability that, but for the alleged acts of misconduct, the jury would have reached a different result or verdict with other counsel. *Id.* at 284-88. The state courts' adjudication of the claims is a

17

reasonable application of *Strickland*.

Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of state law, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986) (providing "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice"); *Strickland,* 460 U.S. at 689 (providing strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) ( providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Perillo v. Johnson,* 79 F.3d 441, 447 (5th Cir. 1996) (providing the mere possibility of a conflict of interest is not sufficient); *United States v. Green,* 882 F,2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too

uncertain"); *Ross v. Estelle,* 694 F.2d 1008, 1011-12 (5th Cir. 1983) (providing "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value).

Petitioner has not demonstrated deficient performance or shown any reasonable probability that the outcome of his trial would have been different but for counsel's representation. A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct is strategically motivated, and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner has presented no evidentiary, factual, or legal basis in this federal habeas action that could lead the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d). Overall, trial counsel devised a viable defense, filed pretrial motions, appeared at pretrial hearings, conducted voir dire, made meritorious objections and motions during trial, cross-examined state witnesses, called a defense witness, and gave opening and closing arguments. A petitioner is required to demonstrate that counsel's performance, in light of the entire proceeding, was so inadequate as to render his trial unfair. *Washington v. Watkins,* 655 F.2d 1346, 1355 (5th Cir. 1981). Having reviewed the entirety of the record, counsel's performance was well within the wide range of professionally competent assistance.

### C. Prosecutorial Misconduct

Under his ninth ground, Petitioner claims the state engaged in prosecutorial misconduct by failing to disclose exculpatory evidence. Specifically, Petitioner asserts the prosecution–

19

failed to provide analysis of the fingerprint(s) collected at the crime scene; failed to provide the AFIS report from the latent print obtained from the crime scene, which was in nature and testimony exculpatory to Fain and Fain's case.

Pet'r's Mem. 15, ECF No. 12.

To prevail on a claim under *Brady v. Maryland,* 373 U.S. 83 (1963), a petitioner must establish that (1) the prosecution suppressed or withheld evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to either guilt or punishment. *United States v. Fisher,* 106 F.3d 622, 634 (5th Cir. 1997) (quoting *Westley v. Johnson,* 83 F.3d 714, 725 (5th Cir. 1996), *cert. denied,* 519 U.S. 1094 (1997)). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley,* 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)). The state's crime scene investigator testified at trial that he collected a partial latent fingerprint from the hot water knob in the victim's master bathroom which they were unable to identify. Adm. R. 252, ECF No. 29-13. According to Petitioner, this evidence would have been exculpatory "because as the Prosecutor stated to a State witness, 'Could this assailant have used the bathroom area to clean up, so to speak.' The reply from the witness was: 'That is possible.'" Pet. 15, ECF.

The state habeas court found that Tarrant County Criminal District Attorney's Office maintains an open-file policy; that the prosecution provided the offense reports to the defense containing information regarding the latent fingerprint from the sink knob; that the defense was able to question the crime scene investigator at trial about the latent fingerprint; and that Petitioner provided no evidence that the police collected fingerprints from the crime scene that do not match his. Adm. R. 252-53, ECF No. 29-13. Based on its findings, the state court concluded that Petitioner

20

could not show that the prosecution failed to disclose favorable material evidence or that the evidence would have affected the outcome of his trial. *Id.* at 253. The state court's application of *Brady* is not unreasonable. A *Brady* violation does not occur where, as here, the information is known to the defense before trial. *See West v. Johnson,* 92 F.3d 1385, 1399 (5th Cir. 1996). Further, to the extent Petitioner claims that the prosecution failed to disclose any analysis of the latent print, failed to enter the print into the AFIS, and failed to use the print to determine the identity of the real assailant, the claims are conclusory. It appears the print was analyzed by the state's investigator, but the record is silent as to whether it was placed into AFIS for comparison. The investigator's testimony suggests that the print was placed into AFIS but no matches resulted. Adm. R., Reporter's R., vol. 9, 45, ECF No. 27-6.

Petitioner also claims the prosecution failed to disclose the registration information or title history for the pickup truck that they alleged he owned at the time of the murder. Pet'r's Mem. 15, ECF No. 12. The state habeas court found that the defense requested additional information regarding the white Ford pickup truck associated with Petitioner and the murder, including any multi-state title history; that the prosecution was to provide this information to the defense; that there was no evidence or objection by defense counsel at trial that the prosecution did not provide the requested information; that defense counsel was able to cross-examine Petitioner's brother regarding Petitioner's acquisition of the truck; and that the state did not fail to disclose favorable material evidence. Adm. R. 252, ECF No. 29-13. The state court's application of *Brady* is not unreasonable. Petitioner asserts that the state failed to produce the information, however, without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue to be of probative evidentiary value. *Ross v. Estelle,* 694 F.2d 1008, 1011-12 (5th Cir. 1983).

Under his seventeenth ground, Petitioner claims the state engaged in misconduct by presenting insufficient or no evidence to support a finding that he committed or attempted to commit a sexual assault. Pet'r's Mem. 28-29, ECF No. 12. According to Petitioner, "other than the oral DNA, there is **"NO"** cooroborating [sic] evidence that [he] had committed a sexual assault." *Id.* at 29 (emphasis in original). He adds (all spelling, punctuation and/or grammatical errors not otherwise corrected for clarity are in the original):

> Th[r]ough improperly leading questions the Prosecution elicited from both officers testimony that Donahew's crime scen[e] **"could have been consistent with a sexual assault crime scene**. The glaring problem here is the fact that the Prosecution **never** defined exactly **how** a scene was **"consistent"** with a sexual assault. The stacking of one inference upon another is not considered evidence, with regards to the sufficient of the evidence in circumstantial evidence cases, one inference cannot be based upon another inference to reach a conclusion or sustain a conviction.
>
> A jury may not reasonably infer an ultimate fact from meager circumstantial evidence, none more probable that the other. In this instance, the Prosecution obtained a conviction against FAIN in exactly this fashion, by presenting the fact that FAIN'S DNA was recovered from Donahew's oral swab, which proved nothing more than her having engaged in oral sexual activity prior to her death - - which FAIN has never denied or disputed due to the fact that **at no time was he asked.**
>
> The Prosecution then "supported & bolstered" their theory of sexual assault Capital Murder with pieces of "meager circumstantial evidence, none more probable than another." This was particularly true in this case of the sexual assault aspect of the case, necessary to obtain a conviction for Capital Murder, but **"prove"** only by the Prosecution requiring that the jurors make a series of unsupported inferences.

*Id.* at 30 (emphasis in original) (citations omitted).

The essence of this claim was raised on direct appeal in the context of a sufficiency-of-the-evidence claim. In reviewing the sufficiency of the evidence in the context of habeas corpus proceedings challenging the judgment of a state court, a federal court's review is limited to determining whether, based upon the record evidence adduced at trial, no rational trier of fact could

have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324 (1979). The court's review of the evidence is conducted in the light most favorable to the verdict. *Selvage v. Lynaugh,* 823 F.2d 845, 847 (5th Cir. 1987).

The state appellate court addressed both the legal and factual sufficiency of the evidence, however for purposes of federal habeas review it is necessary only to analyze the court's determination of the legal sufficiency of the evidence under *Jackson*. The court summarized the evidence adduced at trial, as recited above, and provided the following recap and analysis under *Jackson*:

> To recap, Danny Smith testified that Appellant had admitted strangling Donahew, albeit during consensual sexual activity. The medical examiner's evidence showed that stabbing was a secondary cause of death. The jury was free to believe or disbelieve Appellant's description of the sexual activity as consensual, and the fact that Donahew was stabbed was some evidence that the sexual activity was not consensual. Corroborating evidence includes the evidence that Appellant's DNA was found in Donahew's mouth, Nix's testimony that he had seen Donahew talking to Appellant in a bar, and Nelson's testimony that a truck similar to Appellant's had been parked on the street near Donahew's house after 5:00 p.m. on the day of her death. This evidence tends to connect Appellant to Donahew's murder. Applying the appropriate standard of review and viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found the essential elements of capital murder in the course of committing aggravated sexual assault beyond a reasonable doubt.

Adm. R., Mem. Op. 11, ECF No. 26-17 (footnote omitted).

The state court's determination that the evidence was sufficient to establish Petitioner's guilt beyond a reasonable doubt, was not an unreasonable application of *Jackson*. It necessarily follows that Petitioner's claim of misconduct fails.

**E. Search and Seizure**

Under his fifth, sixth, seventh and tenth grounds, Petitioner complains of the collection of

his DNA samples via oral swab. Specifically, he asserts that the sample taken in August 2001 for placement in the CODIS database pursuant to § 411.148 of the Texas Government Code was an "unconstitutional law and/or procedure" based on an "unconstitutionally retroactive law" enacted after his August 1994 arrest on the Williamson County murder and was, thus, "fruit of the poisonous tree." He also asserts that the December 5, 2005, search warrant for the second DNA sample was illegally obtained and, thus, the sample was "fruit of the poisonous tree." Pet'r's Mem. 9-11, 17-19, ECF No. 12.

Although Petitioner filed a motion to suppress the DNA evidence, the trial court denied the motion prior to trial. The state appellate court, rejecting the claim on appeal, stated:

> Although the DNA sample at trial was taken pursuant to a warrant, dated December 5, 2005, the warrant was obtained based on the CODIS match, which had been based on the initial 2001 DNA sample obtained from Appellant without a warrant but pursuant to the government code provision. The Texas Court of Criminal Appeals has addressed this issue and has decided it contrary to Appellant's argument:

>> Although the taking of a blood sample for DNA analysis purposes is clearly a search, the Fourth Amendment does not proscribe all searches, only those that are unreasonable. The United States Supreme Court has yet to address the validity of state and federal DNA collection statutes under the Fourth Amendment, but state and federal courts that have addressed the issue of a warrantless search for DNA databank samples pursuant to statute are almost unanimous in holding that these statutes do not violate the Fourth Amendment.

>> The courts deciding this issue have split in their rationale. Some have stated that DNA collection statutes permit a warrantless, suspicionless search under the Supreme Court's "special needs" test. Most federal and state courts, however, have upheld the DNA databank statutes under the "totality of circumstances" test. This trend increased after the Supreme Court's decision in *Samson v. California,* which used the "totality of the circumstances" test to uphold suspicionless searches of felons on parole, as long as the searches are not arbitrary, capricious, or harassing. Even before *Samson,* numerous courts had applied the "totality of the circumstances" test and concluded that the governmental interest served by collecting DNA outweighed the minimal

> intrusion upon a probationer's or parolee's privacy. We agree with those
> jurisdictions that have held that warrantless DNA collection and databank
> systems pass Fourth Amendment scrutiny under the "totality of the
> circumstances."
>
> Following the mandatory precedent of the Texas Court of Criminal Appeals, we
> overrule Appellant's . . . point.

Adm. R., Mem. Op. 16-16, ECF No. 26-17 (footnote 8 omitted).

The state court's adjudication of the claims is consistent with federal law on the issue. The

Fifth Circuit has rejected Fourth Amendment challenges to compulsory DNA-collection statutes

targeting convicted felons for registration in a DNA database pursuant to Texas law. *See Velasquez

v. Woods,* 329 F.3d 420, 421 (5th Cir. 2003). And, the Supreme Court has more recently upheld the

constitutionality of Maryland's DNA statute authorizing the collection of DNA samples for analysis

from all persons merely *arrested* on felony charges. *Maryland v. King,* ⸺ U.S. ⸺, 133 S.Ct. 1958,

(2013). Convicted felons, such as Petitioner, have an even less expectation of privacy. Thus, the

statutorily required collection of Petitioner's DNA sample does not violate the Fourth Amendment.[2]

In any event, Petitioner's Fourth Amendment challenge is barred by *Stone v. Powell,* 428 U.S. 465,

481-82 (1976).

### E. Judicial Bias, Error, and Misconduct

Under Petitioner's thirteenth, nineteenth, and twentieth grounds, he complains of trial court

error, bias, and misconduct. First, he claims the trial court's "stacking" of his sentences was a "clear

abuse of discretion and improper judicial bias" based on vindictiveness because he rejected the

state's plea offer. Pet'r's Mem. 23, ECF No. 12. Sentencing is a matter of state criminal procedure,

---

[2]To the extent Petitioner claims Texas's DNA-collection statute violates article I, § 10 of the Texas Constitution, the claim is not cognizable on federal habeas review. *Sharp v. Johnson,* 107 F.3d 282, 290 (5th Cir. 1997); *Pemberton v. Collins,* 991 F.2d 1218, 1223 (5th Cir. 1993).

and does not involve a denial of fundamental fairness such that it falls within the scope of federal habeas corpus review. *Johnson v. Beto,* 383 F.2d 197,198 (5th Cir. 1967), *cert. denied,* 393 U.S. 868, 89 S.Ct. 153, 21 L.Ed.2d 136 (1968) (state criminal procedure "does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus"). The state habeas court found that, under  § 42.08(b) of the Texas Code of Criminal Procedure, the trial court had the discretion to order Petitioner's life sentence be served consecutively to his life sentence for his prior murder conviction and that there was sufficient evidence linking Petitioner to the prior conviction. Adm. R. 259-60, ECF No. 29-13. Thus, the court concluded that the trial court properly stacked his current sentence on his prior sentence. *Id.* at 260. Petitioner was sentenced according to Texas law.

Next, Petitioner claims "[t]he trial court erred and thus abused it's discretion by granting the State's Motion In Limine, restricting the defense's ability to demonstrate Linda Donahew's promiscuous sexual history, which resulted in FAIN being denied Due Process, thus an adequate defense, to show that Donahew had several 'male friends' that at the time of her death could have actually been her assailant." Pet'r's Mem. 32, ECF No. 12. The trial court granted the state's motion in limine to the extent the parties were not to address the victim's prior sexual history or activity without first presenting the matter to the court. Adm. R. 273, ECF No. 29-13.

Rule 412 of the Texas Rules of Evidence precludes evidence of past sexual behavior of an alleged victim in a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault. TEX. R. EVID. 412(a). The state habeas court, in rejecting this claim, concluded that Rule 412 of the Texas Rules of Evidence, also applies to "non-sexual assault charges predicated by an underlying sexual assault offense." *Id.* at 274. Thus, the state court determined that the rule applied to Petitioner's prosecution for capital murder and that the trial court

26

properly granted the state's motion in limine. *Id.* In reviewing state court evidentiary rulings, this Court does not sit as a super state supreme court. *Bailey v. Procunier,* 744 F.2d 1166, 1168 (5th Cir. 1984). A state evidentiary ruling, even if erroneous, will entitle a prisoner to federal habeas corpus relief "only when the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Id.* Petitioner has not shown how the ruling on the motion in limine violated a specific constitutional right or rendered his trial fundamentally unfair, especially in light of the fact that the trial court's ruling was not a per se bar of such evidence and that evidence that Donahew may have had other sexual partners at the time of her death was presented at trial. Deferring to the state court's application of state law, the court's adjudication of the issue was reasonable in light of the evidence. *See Hale v. Quarterman,* No. 4:08-CV-0141-A, 2009 WL 1651504 at *4 (N.D.Tex. Jun.10, 2009) (rejecting claim that exclusion of evidence of past sexual behavior violated Sixth Amendment right to confront witnesses and Fourteenth Amendment right to a fair trial).

Finally, Petitioner claims the state trial judge was prejudiced or biased against him because he sustained every objection made by the state but overruled most of the defense objections; failed to appoint new counsel at his request; and failed to provide a "limiting statement" when the prosecution made inappropriate remarks and statements. Pet'r's Mem. 33-34, ECF No. 12. The state habeas court found no evidentiary basis for these claims and determined that Petitioner had not established that he suffered some constitutional error due to judicial bias. Adm. R. 275-76, ECF No. 29-13. The state court's determination is neither contrary to, or an unreasonable application, of Supreme Court precedent nor unreasonable based on the evidence available to the court.

The Due Process Clause requires a "fair trial in a fair tribunal." *Bracy v. Gramley,* 520 U.S.

27

899, 904 (1997) (citing *Withrow v. Larkin,* 421 U.S. 35, 46 (1975)). Accordingly, to prove judicial

bias in contravention of due process, Petitioner must demonstrate that the trial judge had an actual

bias against him or an interest in the outcome of his particular case. *See id.* at 905 (citing *Aetna Life*

*Ins. Co. v. Lavoie,* 475 U.S. 813, 821-822 (1986)).

Petitioner claims that the trial judge was biased by failing to rule on his pro se motions. The

record reflects that, on June 21, 2006, Petitioner filed a plethora of pro-se motions, including a

motion for appointment of counsel, and that counsel was appointed to represent him the next day on

June 22, 2006. Thereafter, petitioner arguably abandoned his pro se motions by failing to call the

court's attention to the fact that they remained unresolved. In any event, there is no indication that

the motions were ever adopted by Petitioner's trial counsel. Although a defendant has a

constitutional right to represent himself, there is no right to hybrid representation. *See United States*

*v. Mikolajczyk,* 137 F.3d 237, 246 (5th Cir. 1998). Under these circumstances, the trial court was not

required to rule on his pro se motions.

Petitioner claims the trial judge was biased by making inappropriate personal remarks and

sealing volume six of the reporter's record to conceal his remarks. First, petitioner directs the Court

to volume four, page five of the reporter's record, which is a transcription of the pretrial proceeding

to take the oral/videotaped deposition of one of the state's witnesses who was scheduled to be

deployed to Afghanistan. Having reviewed the record, no inappropriate remarks are noted, and

volume six of the reporter's record is not on record with the Court. Second, Petitioner directs the

Court to several instances where the judge tells the jury certain aspects of the proceedings are, in

essence, "none of their business." Adm. R., Reporter's R., vol. 8, 208, ECF No. 27-5 & vol. 9, 159,

ECF No. 27-8. The judge explained to the jury at the outset of trial that certain legal issues were the

court's "business" and that the deliberations would be their "business." The judge reinforced this position several times throughout the trial. The judge's comments fall within "ordinary efforts at courtroom administration," which do not support a bias or partiality challenge. *Liteky v. United States,* 510 U.S. 540, 555–56 (1994).

Petitioner claims the trial judge gave testimony himself concerning Bonnie Bishop's identification of Petitioner in a photographic lineup. Adm. R., State's Ex. 16, ECF No. 27-11. What he appears to argue is that the judge made the prosecutor's argument regarding the admissibility of the identification for the state. *Id.*, vol. 10, 51-55, ECF No. 27-7. Having reviewed the judge's remarks, which were made outside the presence of the jury, it appears that the judge was merely explaining the basis of his ruling regarding the admissibility of the identification. The Court finds no prejudicial comments or ruling.

Fourth, Petitioner claims the judge was biased by sustaining every objections made by the prosecution but overruling the majority of the defense's objections. Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion, and Petitioner does not otherwise demonstrate a basis for relief. *See Likely,* 510 U.S. at 555; *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966).

### F. Actual Innocence

Lastly, under his eighteenth ground, Petitioner claims he is actually and factually innocent of capital murder because there is no evidence that the victim was sexually assaulted. Pet'r's Mem. 31, ECF No. 12. "Actual innocence" is not an independent ground for habeas corpus relief. *Herrera v. Collins,* 506 U.S. 390, 400 (1993); *Foster v. Quarterman,* 466 F.3d 359, 367 (5th Cir. 2006); *Dowthitt v. Johnson,* 230 F.3d 733, 741-42 (5th Cir. 2000). The Supreme Court reaffirmed in

*McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013), that it has not resolved whether a prisoner may

be entitled to habeas corpus relief based on a freestanding claim of actual innocence. Until that time,

such a claim it not cognizable on federal habeas review. Moreover, to establish actual innocence, a

petitioner "must support his allegations with new, reliable evidence that was not presented at trial

and show that it was 'more likely than not that no reasonable juror would have convicted him in the

light of the new evidence.'" *Fairman v. Anderson,* 188 F.3d 635, 664 (5th Cir. 1999) (quoting *Schlup*

*v. Delo,* 513 U.S. 298, 327 (1995)); *accord Finley v. Johnson,* 243 F.3d 215, 221 (5th Cir. 2001).

Petitioner has offered no new, reliable evidence sufficient to refute the jury's verdict.

## VI.  CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is

**DENIED**.

**SO ORDERED** on this 21st day of November, 2016.

Reed O'Connor
UNITED STATES DISTRICT JUDGE